**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TIGRAN TONOYAN,<br><br>        Petitioner,<br><br>    v.<br><br>TANYA ANDREWS, ADMINISTRATOR OF GOLDEN STATE ANNEX DETENTION FACILITY, et al.,<br><br>        Respondents. | Case No.: 1:25-cv-00815-SKO (HC)<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING RESPONDENT TO PROVIDE A BOND HEARING WITHIN THIRTY (30) DAYS, AND DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE CASE |

    Petitioner is an immigration detainee proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. All parties consented to the jurisdiction of a United States Magistrate Judge for all further proceedings in this action, including trial and entry of judgment, pursuant to 28 U.S.C. 636(c)(1). Accordingly, the matter was reassigned to the undersigned for all further proceedings including trial and entry of judgment. (Doc. 12.)

    Petitioner challenges his continued detention by the Bureau of Immigration and Customs Enforcement ("ICE"). He claims he should be immediately released or granted release on bond, because he has detained for longer than six months with no neutral decisionmaker having conducted a

hearing to determine whether his continued incarceration is warranted based on danger or flight risk. Respondent contends that Petitioner's detention is constitutional given the length of his detention is solely due to his own efforts to delay the administrative process.  The Court finds that Petitioner's detention without a bond hearing has become unreasonably prolonged and will direct Respondent to provide Petitioner with a bond hearing before an immigration judge.

I.   BACKGROUND[1]

Petitioner is a native and citizen of Armenia. (Doc. 14-2 at 2.) He applied for admission to the United States from Mexico on March 15, 2024, but was denied admission. (Doc. 14-1 at 2.)  On October 3, 2024, he entered the United States without inspection. (Doc. 14-2 at 7.)  On October 5, 2024, he was issued a Notice and Order of Expedited Removal. (Doc. 14-1 at 2.) On October 27, 2024, he was paroled into the United States but advised that he was not granted admission and that parole could be revoked at any time. (Doc. 14-1 at 3.)

On November 25, 2024, Petitioner reported to the ICE Los Angeles office as instructed and was re-detained pursuant to Immigration and Nationality Act ("INA") § 235(b) pending removal. (Doc. 14-1 at 3.) Petitioner claimed a fear of returning to his native country and was interviewed by an asylum officer, who found Petitioner demonstrated a credible fear. (Doc. 14-1 at 3.) Thereafter, an asylum officer issued a Notice to Appear on January 13, 2025, initiating removal proceedings and charging Petitioner with inadmissibility pursuant to INA § 212(a)(7)(A)(i)(I). (Doc. 14-1 at 3.)

On January 27, 2025, Petitioner appeared before an immigration judge ("IJ"), admitted all factual allegations, and conceded the charge of inadmissibility. (Doc. 14-1 at 3.) The IJ continued the matter to permit him to file an application for relief from removal. (Doc. 14-1 at 3.)

On February 7, 2025, Petitioner filed a motion to request a bond hearing. (Doc. 14-1 at 3.) On February 20, 2025, Petitioner withdrew his request for a bond hearing. (Doc. 14-1 at 3.) The IJ granted the motion to withdraw, and both Petitioner and the Government waived appeal. (Doc. 14-1 at 3.) Since then, Petitioner has requested and been granted multiple continuances to prepare and file applications for relief from removal, to prepare and file supplemental supporting evidence, and to

---

[1] This information is derived from the parties' pleadings and the exhibits submitted by Respondent.

allow time for Petitioner to secure a new attorney to represent him in immigration proceedings. (Doc. 14-1 at 3.) At least five court hearings were held (February 28, 2025, April 8, 2025, May 6, 2025, June 24, 2025, and July 15, 2025) where continuances were granted to Petitioner by the IJ. (Doc. 14-1 at 3.)

On July 7, 2025, Petitioner filed a petition for writ of habeas corpus. (Doc. 1.) On August 22, 2025, Respondent filed a response to the petition. (Doc. 14.) Petitioner did not timely file a traverse.

## II.   DISCUSSION

Petitioner states he has been in continuous detention since approximately November 25, 2024. He contends the approximately 11-month period has become unreasonably prolonged, and he should be given a bond hearing, or in the alternative, released from custody.

### A.   Statutory Background

A non-citizen who is present in the United States but has not been admitted is considered an applicant for admission. 8 U.S.C.A. § 1225(a)(1). Such applicant is subject to expedited removal if the applicant (1) is inadmissible because he or she lacks a valid entry document; (2) has not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) is among those whom the Secretary of Homeland Security has designated for expedited removal. 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)(I)–(II). Once "an immigration officer determines" that a designated applicant "is inadmissible," "the officer [must] order the alien removed from the United States without further hearing or review." 8 U.S.C.A. § 1225(b)(1)(A)(i). Here, Petitioner was determined inadmissible and placed in expedited removal proceedings.

If an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." 8 U.S.C.A. §§ 1225(b)(1)(A)(i)–(ii). The point of this screening interview is to determine whether the applicant has a "credible fear of persecution." § 1225(b)(1)(B)(v). If the asylum officer finds an applicant's asserted fear to be credible, the applicant will receive "full consideration" of his asylum claim in a standard removal hearing. 8 C.F.R. § 208.30(f); see 8 U.S.C. § 1225(b)(1)(B)(ii). If the asylum officer finds that the applicant does not have a credible fear, a supervisor will review the asylum officer's determination. 8 C.F.R. § 208.30(e)(8). If the supervisor agrees with it, the applicant may appeal to an

immigration judge, who can take further evidence and "shall make a de novo determination." 8 U.S.C.A. §§ 1003.42(c), (d)(1); see 8 U.S.C. § 1225(b)(1)(B)(iii)(III). As previously set forth, Petitioner expressed a fear of persecution and was referred to an asylum officer, who found his fears to be credible. A hearing on his application for asylum has been continually postponed at Petitioner's request.

Regardless of whether the applicant receives full or expedited review, he or she is not entitled to immediate release. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 111 (2020). They "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." Id. (citing 8 U.S.C.A. § 1225(b)(1)(B)(iii)(IV)). Likewise, applicants who are found to have a credible fear may also be detained pending further consideration of their asylum applications. Id. (citing 8 U.S.C.A. § 1225(b)(1)(B)(ii)). In either case, the applicant must be detained until the conclusion of those proceedings. Jennings v. Rodriguez, 583 U.S. 281, 297 (2018). However, an applicant "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" Id. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)). Said parole request is considered by designated ICE Enforcement Removal Operations ("ERO") officers. 8 C.F.R. § 212.5(a). "Such parole, however, 'shall not be regarded as an admission of the alien.'" Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

B.     Due Process in Prolonged Immigration Detention

The parties acknowledge that Petitioner has been deemed inadmissible and is in removal proceedings subject to mandatory detention pursuant to § 1225(b).  Petitioner contends he has been unreasonably detained for approximately 11 months without a bond hearing in violation of his due process rights.  He argues that due process requires he should be granted a bond hearing before an immigration judge to determine whether he is a risk of flight or danger to the community.

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," Reno v. Flores, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," Zadvydas v. Davis, 533 U.S. 678, 690 (2001). The Supreme Court nevertheless has

recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." Demore v. Kim, 538 U.S. 510, 531 (2003); see also Carlson v. Landon, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure").

In analyzing whether prolonged detention violates due process, many courts have looked to Justice Kennedy's concurrence in Demore, which states that, "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring).

Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts, have found that unreasonably long detention periods may violate the due process clause. See, e.g., Rodriguez v. Marin ("Rodriguez IV"), 909 F.3d 252, 256 (9th Cir. 2018) (the Ninth Circuit asserted "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional...."); Diop v. ICE/Homeland Sec., 656 F.3d 221, 235 (3d Cir. 2011) (detention of an alien for a period of nearly three years without further inquiry into whether it was necessary to ensure his appearance at the removal proceedings or to prevent a risk of danger to the community, was unreasonable, and, therefore, a violation of the Due Process Clause"); German Santos v. Warden Pike, 965 F.3d 203 (3d Cir. 2020) (reversing and remanding to district court to order bond hearing while detained under § 1226(c)); Diep v. Wofford, 1:24-cv-01238-SKO, 2025 WL 604744 (E.D. Cal Feb. 25, 2025) (ordering bond hearing for noncitizen detained under 8 U.S.C. § 1226(c) for 13 months); A.E. v. Andrews, 1:25-cv-00107-KES-SKO, 2025 WL 1424382 (E.D. Cal. May 16, 2025) (ordering bond hearing for noncitizen detained under 8 U.S.C. § 1225(b) for 20 months).

The Ninth Circuit has also noted that many courts have applied the Mathews[2] test in considering due process challenges in the immigration context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022). However, the Supreme Court, when confronted with constitutional challenges to immigration detention, has not resolved them through express application of Mathews. See, e.g., Demore, 538 U.S. at 523, 526–29; see also Dusenbery v. United States, 534 U.S. 161, 168,

---

[2] Mathews v. Eldridge, 424 U.S. 319 (1976).

122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ("[W]e have never viewed Mathews as announcing an all-embracing test for deciding due process claims."). Nevertheless, several district courts in the Ninth Circuit including this Court have employed the Mathews test in the context of evaluating whether due process entitles a petitioner to a bond hearing. See, e.g., Jensen v. Garland, 2023 WL 3246522, at *4 (C.D. Cal. 2023); Galdillo v. U.S. Dep't of Homeland Sec., 2021 WL 4839502, at *3 (C.D. Cal. 2021); Jimenez v. Wolf, 2020 WL 510347, at *3 (N.D. Cal. 2020); Riego v. Scott, 2025 WL 660535 (E.D. Cal. 2025).

The Ninth Circuit has noted the common use of the Mathews test and assumed (without deciding) that it applies to due process claims in the immigration detention context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Thus, the Court finds application of the Mathews test in this case appropriate.  Under the Mathews test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." Mathews, 424 U.S. at 334–35. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

In the first factor, the Court evaluates Petitioner's private interest in being free from detention against the government's stated interests in protecting the public from a risk of danger and any risk of flight to avoid removal. Petitioner has been detained approximately 11 months. This period is greater than the six-month presumptively reasonable period set forth in Zadvydas and qualifies as prolonged. 533 U.S. at 701.

In Rodriguez Diaz v. Garland, the Ninth Circuit stated that "in evaluating the first prong of the Mathews analysis, it is not sufficient to simply count the months of detention and leave it at that. The process received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order must also be considered. 53 F.4th at 1208.  The Ninth Circuit stated it was "important not to overstate the strength of Petitioner's showing under the first Mathews factor," because detentions longer than six months were

considered "prolonged" in the context of detentions "for which no individualized bond hearings had taken place at all." 53 F.4th at 1213.

In <u>Rodriguez Diaz</u>, the petitioner had received a bond hearing after he was detained. <u>Id</u>. at 1207. Here, unlike the petitioner in <u>Rodriguez Diaz</u>, Petitioner has not received the benefit of a bond hearing. The Ninth Circuit noted that detentions longer than six months were considered "prolonged" in cases such as this where "no individualized bond hearings had taken place at all." <u>Id</u>. at 1207. The appellate court found this distinction significant. Id.  Thus, Petitioner's private interest in being free from prolonged detention of approximately 11 months weighs in his favor. The Court also considers whether the reason for the lengthy period of detention is due to Petitioner's own actions. <u>Rodriguez Diaz</u>, 53 F.4th at 1208; <u>Demore</u>, 538 U.S. at 530-31. Here, although much of the detention period can be attributed to Petitioner's actions, Petitioner's lengthy detention of 11 months is longer than the 6-month presumptively reasonable period and thus weighs in Petitioner's favor.

As to the second factor, "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," <u>Mathews</u>, 424 U.S. at 335, the Court finds this factor also weighs in favor of the Government. The "risk of an erroneous deprivation of [a petitioner's] interest is high" where "[h]e has not received any bond or custody redetermination hearing[.]" <u>Jimenez</u>, 2020 WL 510347, at *3.  Thus, the probable value of additional procedural safeguards, i.e., a bond hearing, is high, because Respondents have provided virtually no procedural safeguards at all. Given that Petitioner has been held without a bond hearing for almost a year, and it is not clear when detention will end, the risk of erroneous deprivation weighs in favor of granting a bond hearing..

In the third factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." <u>Mathews</u>, 424 U.S. at 335. As previously discussed, the government has a strong interest in effecting removal. <u>Demore</u>, 538 U.S. at 531. As other courts have recognized, however, the key government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." <u>Zagal-Alcaraz v. ICE Field Office Director</u>, 2020 WL 1862254, at *7 (D. Or. 2020) (collecting cases).  Here, the government's asserted interest is hinged on

mere speculation about Petitioner's risk of flight or dangerousness. Petitioner seeks a bond hearing, not unqualified release. Providing a bond hearing would not undercut the government's asserted interest in effecting removal. Indeed, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community. See In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006). Given "the minimal cost of conducting a bond hearing, and the ability of the IJ to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified," courts have concluded that "the government's interest is not as weighty as Petitioner's." Zagal-Alcaraz, 2020 WL 1862254, *7 (quoting Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019)). The Court agrees with this analysis. Although the Government has a strong interest, it is outweighed by Petitioner's.

In sum, the three Mathews factors weigh in Petitioner's favor and outweigh the government's interest in further detention without inquiry into whether he represents a flight risk or danger to the community. The Court thus finds that Petitioner's prolonged detention without a bond hearing before an IJ violates his Fifth Amendment due process rights.

### C. Bond Hearing

Having determined that a bond hearing is required, the Court turns to the question of who bears the burden of proof at said hearing. Petitioner contends that the Government should bear the burden of proof to justify detention by clear and convincing evidence. Respondent contends that Petitioner should bear that burden.

The Court finds that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond" and that the bond hearing must comport with the other requirements of Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). See Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024) (stating that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" with respect to a bond hearing for a noncitizen detained under § 1226(c)); Black v. Decker, 103 F.4th 133, 159 (2d Cir. 2024) (affirming district court's order "requir[ing] the government to show at such a bond hearing, by clear and convincing evidence, the need for Black's continued detention" under § 1226(c)); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 214 (3d Cir. 2020) (holding that in order to justify a noncitizen's continued detention under §

1226(c) "the Government bears the burden of persuasion by clear and convincing evidence. That evidence must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community"). In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017); Black, 103 F.4th at 138 (The district court "correctly directed the immigration judge ("IJ"), in setting his bond and establishing appropriate terms for his potential release, to consider his ability to pay and alternative means of assuring appearance.").

## III.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is GRANTED;

2) Respondent is DIRECTED to provide Petitioner with a bond hearing within thirty (30) days before an IJ wherein the Government must demonstrate by clear and convincing evidence that Petitioner is not a flight risk or a danger to the community, or in the alternative, release Petitioner on appropriate conditions of supervision; and

3) The Clerk of Court is DIRECTED to enter judgment and close the case.

IT IS SO ORDERED.

Dated:    **October 27, 2025**            /s/ *Sheila K. Oberto*
                                         UNITED STATES MAGISTRATE JUDGE